JAMES PIRTLE
94-629 HEAINOA PLACE
WAIPAHU, HI 96797

808-330-4308

w. fler
JMS

ORIGINAL

# IN THE UNITED STATES DISTRICT COURT

## FOR HAWAII

FILED IN THE
UNITED STATES DISTRICT COURT
DISTRICT OF HAWAII

AUG 18 2022

at 9 o'clock and 45 min. 9 M
CLERK, U.S. DISTRICT COURT
unpaid

JAMES PIRTLE

Plaintiff,

v.

SCOTT NAGO, in his official capacity as

Chief Election Officer of the State of Hawaii

_____ /

Case. No **CV22   00381 JMS WRP**

COMPLAINT

JAMES PIRTLE Pro Se,

94-629 Heainoa Place

Waipahu, Hi 96797

808-330-4308

Jpirtle511@gmail.com

_____ /

SCOTT NAGO

Office Of Elections

802 Lehua venue

Pearl City, Hawaii 96782

## COMPLAINT

Plaintiff, *pro se,* hereby files this Complaint against Defendant, Scott Nago. in his official capacity as Chief Election Officer of the State of Hawaii ("Defendant"). In support of the claims set forth herein, Plaintiff alleges and avers as follows:

## .I. INTRODUCTION

1. The methods by which elections at the local, state, and federal levels in Hawaii were conducted in 2020 and are being conducted in 2022 cannot be shown to provide the fair elections guaranteed to every citizen under the U.S. Constitution. *See* the 14th Amendment to the U.S. Constitution, the Elections Clause (Art. I. § 4, cl. 1).

2. Hawaii elections were conducted in 2020 and are planned to be conducted in 2022 in a manner that cannot ensure that each vote cast is counted as cast. In 2020, there were glaring chain of custody issues and a lack of follow through to establish a verifiable chain of custody process, despite what was written in official reports.

3. A cryptographic security risk inherent in all voting machines by design, a Trapdoor mechanism described in Exhibit G, makes the output of votes shown in reported election results impossible to reconcile with the ballot inputs, except under a full visual inspection and re-count of all paper ballots cast.

4. The feasibility of changing the votes after the machines read the ballots is too high to leave such a critical aspect of the fundamental right to free and fair elections in the United States vulnerable to the intentions of foreign and domestic bad actors who would sway election results at all levels, Local, State and Federal.

5. In order to verify the 2020 election results and to ensure the fairness of all future elections, retention of the November, 2020 election data beyond the September 4th, 2022 required period is necessary.

6. Until an in-person, paper ballot, day-of-election voting process is re-established, with results reported immediately after the voting period ends, Americans cannot have any level of confidence that the reported results of any elections accurately reflect the votes cast.

7. Before and during the November 2020 election, neither of the two Voting System Testing Laboratories ("VSTLs") typically accredited by the Election Assistance Commission ("EAC") had current un-expired accreditations. Therefore, with no valid Federally approved VSTLs, there could be no such VSTL approval of Hawaii's voting systems for the November 2020 election.

8. Time is of the essence, as the 22-month election data retention requirement expires relative to the November 2020 election on September 3rd, 2022.

9. The following diagram illustrates the simplified election process and claims raised here. The critical piece is the "Black Box/ Trapdoor Code", which is undetected by design and can be used, as Exhibit G shows, to completely remove the link between the ballot inputs and "vote" outputs.



## II. PARTIES

10. Plaintiff is a resident and registered voter of the State of Hawaii.

11. Defendant Scott Nago is the Chief Election Officer of the State of Hawaii. Defendant Nago is named in his official capacity.

## III. JURISDICTION AND VENUE

12. Plaintiff incorporates the foregoing paragraphs as set forth herein.

13. This Court has subject matter jurisdiction under 28 U.S.C. 1331 and 28 U.S.C. 1343.

14. Jurisdiction to grant injunctive relief is conferred by 28 U.S. C. 1343(a).

15. Venue is proper under 28 U.S.C. 1391 because "a substantial part of the events or omissions giving rise to the claim occurred" within the United States District of Hawaii where plaintiff resides and defendants conduct official business.

## IV. STATEMENT OF FACTS

Hawaii elections were conducted in 2020 and are planned to be conducted in 2022 in a manner that cannot ensure that each vote cast is counted as cast.

16. Pursuant to Act 136 SLH 2019 (Exhibit A), Hawaii elections are now uniformly by mail (SECTION 1§(1)). Pursuant to Act 136, the Hawaii Office of Elections, whose mission is to conduct honest and efficient elections, is tasked with securely maintaining designated places of deposit of election ballots (§1-I(d)). SECTION 59 requires the Office of Elections shall submit a report to the legislature that includes:  §(6) Any difficulties encountered in the implementation of this Act;  §(7) Specific steps taken and recommendations necessary to prevent fraud and ensure the integrity of the election process; and  §(8) Any other findings and recommendations, including any proposed legislation necessary to clarify and make consistent Chapters 11, 12, 15, 15D, 16, and 19, Hawaii Revised Statutes, in light of the transition to statewide elections by mail.

17. The Hawaii Elections Commission, in its 2020 Biennial Report dated January 21, 2021 (Exhibit B), indicated "no evidence of fraud or errors were found that would suggest our election had been tampered with". In the same report, the Elections Commission admits: "The Elections Commission notes that it was unable to review the meeting minutes from its December 15, 2020 meeting (Exhibit C). After review and approval of the minutes, the Elections Commission may submit an addendum to this report if necessary". In that December 15, 2020 meeting, numerous and obvious chain of custody breeches associated with drop boxes and mail-in ballots were discussed at length.

18. The following is one example from the Election Commission meeting dated December 15, 2020 (Exhibit C): Ms. Nakanelua stated that she served as an official observer on several occasions and there seems to be a glaring lack of chain of custody of the ballots via USPS mail and the drop boxes. She said that USPS does not deliver the mail ballots to the location where the signature verification is done, but instead the Honolulu City Clerk's Office picks up the ballots from USPS unobserved. Ms. Nakanelua stated that there are many people in Hawaii who have concerns about the security of the mail ballot process and the ability to observe what happens to the ballots once they have left the voters' hands. She said she is unsure if this is a question for CEO Nago or the EC, but wants to know how the chain of custody issue can be addressed. Commissioner Koller stated that she has been a poll watcher for many years and has never witnessed anything like this. She said that when there was in-person voting at the polling places, there were observers from the political parties present for the collection and transportation of the ballots, but in this transition to all mail elections, everything in place was thrown out. Commissioner Koller requested that CEO Nago include in his recommendation to the Legislature that they standardize some chain of custody and require observers to be present for the transportation and delivery of the voted ballots from the drop boxes and USPS. Ms. Nakanelua asked CEO Nago if he could address this concern in writing in his next report to the Legislature. CEO Nago replied that the receipt of ballots via USPS mail and drop boxes are the responsibility of the counties, so he can make the recommendation, but cannot guarantee that they will be on board.

19. On January 10, 2021 (Exhibit D), in a supplemental report to the January 21, 2021 Biennial Report, the Election Commission advised that chain of custody be safeguarded in future elections by recommending: "1) Verifiable chain of custody of ballots at every stage of transportation and handling; and 2) Ensure ballot tracking is in place for the 2022 elections, in coordination with the United States Postal Service".

20. Pursuant to Act 136 SECTION 59 § (6-8), the Office of Elections submitted reports dated November 20, 2020 (Exhibit E) and November 18, 2021 (Exhibit F). On page 38 of the November 20, 2020 report, ballot tracking is mentioned one time and with no details or supporting information as to how it was safeguarded in 2020 or how it will be secured in future elections. Chain of custody of ballots is not mentioned at all in the November 20, 2020 report. On page 4 of the November 18, 2021 report, ballot tracking is mentioned twice, "Consistent with HRS § 11-119 that requires election officials to consider the consolidation of ballot printing and ballot package mailing, the contract requires the vendor to handle both matters, similar to what occurred for the 2020 Elections. As such, the Office of Elections has been coordinating with the county clerks and the vendor on fine tuning that process with lessons learned from the 2020 Elections. Additionally, we are expanding this process to include ballot tracking services that the public can access. Again, with the existence of the Kauai special elections, there will be an early opportunity to implement new features, such as ballot tracking services for the public". The report contains no additional details or supporting information on how ballot tracking will be secured in the 2022 election. There is reference that a vendor will handle the matter, but there is no transparency regarding specifically how this will be achieved. Once again, chain of custody of election ballots is not mentioned at all in the November 20, 2020 report. The Elections Commission of the Office of Elections admits that "lessons learned" from the 2020 election are 1) Verifiable chain of custody of ballots at every stage of transportation and handling must be secured; and 2) Ensuring ballot tracking is in place for the 2022 elections, in coordination with the United States Postal Service (Exhibit D). Neither issue has been settled adequately to ensure that each vote cast is counted as cast in 2022.

21. Given the Elections Commission acknowledges that chain of custody and ballot tracking need to be secured in 2022 and beyond, they are implying it was deficient in 2020. In the Election Commission meeting dated December 15, 2020, CEO Nago said that the receipt of ballots via USPS mail and drop boxes are the responsibility of the counties, so he can make the recommendation (regarding securing chain of custody and ballot tracking), but cannot guarantee that they will be on board. This statement is not good enough to ensure Hawaii's election was fair, which is the responsibility of the Chief Election Officer.

22. Pursuant to Act 136 SLH 2019 §(8) (Exhibit A), CEO Nago has complied in part by reporting "Any other findings and recommendations" (Exhibit D), but has neglected to fulfill his obligation to propose "legislation necessary to clarify and make consistent chapters 11, 12, 15, 15D, 16, and 19, Hawaii Revised Statutes, in light of the transition to statewide elections by mail". Instead, CEO Nago evades this duty as indicated in his reply on December 15, 2020 (Exhibit C) "that the receipt of ballots via USPS mail and drop boxes are the responsibility of the counties, so he can make the recommendation, but cannot guarantee that they will be on board". This obfuscation of duty is not good enough to ensure Hawaii's election was fair, which is the responsibility of the Chief Election Officer.

23. The voting systems used in the November 2020 and to be used in the November 2022 elections in Hawaii are manufactured by Hart InterCivic.

24. All voting systems used in the United States, now and in 2020, are subject to undetectable tampering through a Trapdoor mechanism inherent in all election systems. This Trapdoor

mechanism is described in detail in Exhibit G, affidavit of Terpsehore Maras, filed under penalty of perjury on December 1, 2020 in case #2:20-cv-01771-PP in the 2nd Judicial District of the Denver District Court in Denver, Colorado.

25. The key aspect and summary of the sometimes-technical affidavit in layman's terms is its paragraph 61: "Hence, you can't prove anyone manipulated anything. The TRAP DOOR KEY HOLDERS can offer you enough to verify to you what you need to see without revealing anything and once again indicating the inability to detect manipulation. ZERO PROOF of INTEGRITY OF THE VOTE."

26. The problem with verifying that any voting machine system gives a fair outcome, where the votes output are identical to the votes input, is that due to the Trapdoor mechanism it is impossible to prove that the election was fair, which is the responsibility of the Chief Election Officer.

27. It is also impossible to prove that the election was unfair, but the burden is on the State to prove that its systems are not only capable of conducting, but in fact conducted, a fair election. This is an impossibility, as Exhibit A demonstrates.

## V. COUNT I

### Denial of Equal Protection: 14th Amendment of U.S. Constitution; 42 USC1983

28. By allowing the chain of custody and ballot tracking in the 2020 election to be compromised (Exhibits A-F), Hawaii has deprived its voters of the capability of knowing that their vote was accurately counted. No citizen can be assured that their vote was not discarded or modified by actors who may have seized the opportunity to tamper with the ballots. Stating that the election was not tampered with, except for the lack of chain of custody and ballot tracking, is not sufficient to ensure the fair elections guaranteed to every citizen under the U.S. Constitution, and therefore, Hawaii citizens were denied equal protection of the election laws.

29. Plaintiff repeats and re-alleges every allegation contained in the foregoing paragraphs as if fully plead herein.

30. The 14th Amendment of the U.S. Constitution provides "nor shall any state--- deny to any person within its jurisdiction the equal protection of the laws."

31. The Supreme Court of the United States has recognized that the right to vote consists of not only casting a ballot, but having that vote counted accurately, as it was cast.

32. "We regard it as equally unquestionable that the right to have one's vote counted is as open to protection by Congress as the right to put a ballot in a box". *See United States v. Mosley, 238 U.S. 386 (1915)*

33. "No right is more precious in a free country than that of having a voice in the election of those who make laws under which, as good citizens, we must live. Other rights, even the most

basic, are illusory if the right to vote is undermined. "*See Wesberry v. Sanders, 376 U.S. 17 (1964)*

34. "No one would deny that the equal protection clause would … prohibit a law that would expressly give certain citizens a half-vote and others a full vote … [T]he constitutionally guaranteed right to vote and the right to have one's vote counted clearly imply the policy that state election systems, no matter what their form, should be designed to give approximately equal weight to each vote cast….[A} state legislature cannot deny eligible voters the right to vote for Congressmen and the right to have their vote counted." *See Reynolds v. Sims, 377 U.S. 563 (1964), citing Colegrove v. Green, 328 U.S. 549, 328 U.S. 569-571*

35. By utilizing voting machines subject to the Trapdoor mechanism described in Exhibit G, Hawaii has deprived its voters of the capability of knowing that their vote was accurately counted. No citizen can be assured that their vote was not modified by actors working with the Trapdoor mechanism, and therefore citizens of Hawaii were denied equal protection of the election laws.

36. Plaintiff is entitled to temporary, preliminary, and permanent injunctive relief by restraining Defendant from destroying the November 2020 election data as scheduled 22 months after the election, until a thorough investigation of the ballot chain of custody, ballot tracking, the election software and its Trapdoor vulnerabilities can be undertaken.

## VI.    COUNT II

### Denial of Due Process: 14th Amendment of U.S. Constitution; 42 USC 1983

37. Plaintiff repeats and re-alleges every allegation contained in the foregoing paragraphs as if fully plead herein.

38. The Supreme Court of the United States has recognized that the right to vote consists of not only casting a ballot, but having that vote counted accurately, as it was cast.

39. "We regard it as equally unquestionable that the right to have one's vote counted is as open to protection by Congress as the right to put a ballot in a box. " *See United States v. Mosley, 238 U.S. 386 (1915)*

40. "No right is more precious in a free country than that of having a voice in the election of those who make the laws under which, as good citizens, we must live. Other rights, even the most basic, are illusory if the right to vote is undermined." *See Wesberry v. Sanders, 376 U.S. 17 (1964)*

41. "No one would deny that the equal protection clause would…prohibit a law that would expressly give certain citizens a half-vote and others a full vote…. [T]he constitutionally guaranteed right to vote and the right to have one's vote counted clearly imply the policy that state election systems, not matter what their form, should be designed to give approximately equal weight to each vote cast…[A] state legislature cannot deny eligible voters the right to vote

for Congressmen and the right to have their vote counted. " *See Reynolds v. Sims, 377 U.S. 563 (1964), citing Colegrove v. Green, 328 U.S. 549, 328 U.S. 569-571*

42. By allowing the chain of custody and ballot tracking in the 2020 election to be compromised (Exhibits A-F), Hawaii has deprived its voters of the ability to know with certainty that their vote was accurately counted.

43. By utilizing voting machines vulnerable to the Trapdoor mechanism described in Exhibit A, Hawaii has deprived its voters of the ability to know with certainty that their vote was accurately counted.

44. Plaintiff is entitled to temporary, preliminary, and permanent injunctive relief by restraining Defendant from destroying the November 2020 election data as scheduled 22 months after the election, until a thorough investigation of the software and its Trapdoor vulnerabilities can be undertaken.

## VII. COUNT III

### Violation of Guarantee Clause; § 4 of U.S. Constitution; 42 USC 1983

45. By allowing the chain of custody and ballot tracking in the 2020 election to be compromised (Exhibits A-F), Hawaii has deprived its voters of the ability to know with certainty that their vote was accurately counted and that the guaranteed republican form of government was in fact provided in the November 2020 elections.

46. Plaintiff repeats and re-alleges every allegation contained in the foregoing paragraphs as if fully plead herein.

47. The Guarantee Clause of the U.S. Constitution states that, "The United States shall guarantee to every State in the Union a Republican Form of Government…" (Art. IV, § 4)

48. By utilizing voting machines vulnerable to the Trapdoor mechanism described in Exhibit G, Hawaii has deprived its voters of the capability of knowing that their vote was accurately counted and that the guaranteed republican form of government was in fact provided in the November 2020 elections.

49. Plaintiff is entitled to temporary, preliminary, and permanent injunctive relief by restraining Defendant, from destroying the November 2020 election data as scheduled, 22 months after the election, until a thorough investigation of the software and its Trapdoor vulnerabilities can be undertaken.

## VIII. PRAYER FOR RELIEF

WHEREFORE, Plaintiff prays for judgment against Defendants as follows:

A.     That this Court assume jurisdiction of this Action;

   A.  Until plaintiff can prove beyond a reasonable doubt that the ballot chain of custody and tracking are secure at every stage of transportation as well as ensuring ballot tracking is in place for the 2022 elections, in coordination with the United States Postal Service; and

   B.  Until Plaintiff can prove beyond a reasonable doubt that the voting machines, as configured in 2020 elections, 1) do not contain a Trapdoor mechanism as described in Exhibit G and 2) at no point were connected to the Internet or transmitted data wirelessly during the November 2020 elections:

      a.  Temporarily restrain, as well as preliminarily and permanently enjoin, Defendant from destroying, altering or otherwise changing any or all voting machines, software, peripherals, and other data and equipment used to cast, examine, count, tabulate, modify, store, or transmit votes or voting data in the November 2020 elections held in Hawaii and which are planned to be used in the same manner in the upcoming November 2022 elections to be held in Hawaii.

      a.  Order Defendant to preserve in their current state all paper ballots, voting machines, software, peripherals, and other data and equipment used to cast, examine, count, tabulate, modify, store, or transmit votes or voting data in the November 2020 elections held in Hawaii and which are planned to be used in the same manner in the upcoming November 2022 elections to be held in Hawaii.

      b.  Verify chain of custody of ballots at every stage of transportation and handling.

      c.  Ensure ballot tracking is in place for the 2022 elections, in coordination with the United States Postal Service.

      d.  Provide the Hawaii citizenry with detailed protocols of how ballot chain of custody and tracking will be secured.

      e.  Order the State of Hawaii to immediately stop the use of election machines and to reconfigure elections to be held exclusively with paper ballots, and

      f.  Such other relief as is just and proper.

Date: August 18, 2022 JAMES PIRTLE
*Pro se* Plaintiff

## IX. CERTIFICATION AND CLOSING

Under Federal Rule of Civil Procedure 11, by signing below,, I certify to the best of my knowledge, information and belief that this complaint: (1) is not being presented for an improper purpose, such as to harass, cause unnecessary delay, or needlessly increase the cost of litigation; (2) is supported by existing law or by a non-frivolous argument for extending, modifying, or reversing existing law; (3) the factual contentions have evidentiary support or, if specifically so identified, will likely have evidentiary support after a reasonable opportunity for

further investigation or discovery; and (4) the complaint otherwise complies with the requirements of Rule 11.

8/18/2022    *James Pinto*