IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF HAWAII

| | |
|---|---|
| JAMES PIRTLE,<br><br>                    Plaintiff,<br><br>    vs.<br><br>SCOTT NAGO, in his official capacity as Chief Election Officer of the State of Hawaii,<br><br>                    Defendant. | Civ. No. 22-00381 JMS-WRP<br><br>ORDER DENYING PLAINTIFF'S "EMERGENCY EX PARTE MOTION TO RETAIN AND PRESERVE EVIDENCE," ECF NO. 7 |

## ORDER DENYING PLAINTIFF'S "EMERGENCY EX PARTE MOTION TO RETAIN AND PRESERVE EVIDENCE," ECF NO. 7

## I. INTRODUCTION AND BACKGROUND

On August 18, 2022, pro se Plaintiff James Pirtle ("Plaintiff" or "Pirtle") filed a complaint against Defendant Scott Nago, in his official capacity as Chief Election Officer of the State of Hawaii. ECF No. 1. Pirtle alleges that he is "a resident and registered voter of the State of Hawaii." *Id.* at PageID # 3. The complaint challenges aspects of Hawaii's method of conducting its 2020 elections. *See id.* at PageID # 2. Among other allegations, the complaint contends that:

> 1. The methods by which elections at the local, state, and federal levels in Hawaii were conducted in 2020 and are being conducted in 2022 cannot be shown to provide the fair elections guaranteed to every citizen under the U.S.

Constitution.  *See* the 14th Amendment to the U.S.
Constitution, the Elections Clause (Art. I. § 4, cl. 1).

2.  Hawaii elections were conducted in 2020 and are
planned to be conducted in 2022 in a manner that cannot
ensure that each vote cast is counted as cast.  In 2020,
there were glaring chain of custody issues and a lack of
follow through to establish a verifiable chain of custody
process, despite what was written in official reports.

                    . . . .

5.  In order to verify the 2020 election results and to
ensure the fairness of all future elections, retention of the
November, 2020 election data beyond the September 4th,
2022 required period is necessary.

6.  Until an in-person, paper ballot, day-of-election
voting process is re-established, with results reported
immediately after the voting period ends, Americans
cannot have any level of confidence that the reported
results of any elections accurately reflect the votes cast.

*Id.*

The complaint alleges three counts under 42 U.S.C. § 1983:  (1) a

denial of equal protection under the Fourteenth Amendment of the U.S.

Constitution; (2) a denial of due process under the Fourteenth Amendment of the

U.S. Constitution; and (3) a violation of the Guarantee Clause, § 4 of the U.S.

Constitution.  *Id.* at PageID ## 6–8.

In particular, Count One of the complaint alleges that:

By allowing the chain of custody and ballot tracking in
the 2020 election to be compromised . . . , Hawaii has
deprived its voters of the capability of knowing that their

2

> vote was accurately counted.  No citizen can be assured
> that their vote was not discarded or modified by actors
> who may have seized the opportunity to tamper with the
> ballots.  Stating that the election was not tampered with,
> except for the lack of chain of custody and ballot
> tracking, is not sufficient to ensure the fair elections
> guaranteed to every citizen under the U.S. Constitution,
> and therefore, Hawaii citizens were denied equal
> protection of the election laws.

*Id.* at PageID # 6.

Similarly, Count Two alleges that "[t]he Supreme Court of the United States has recognized that the right to vote consists of not only casting a ballot, but having that vote counted accurately, as it was cast," and that "[b]y allowing the chain of custody and ballot tracking in the 2020 election to be compromised . . . , Hawaii has deprived its voters of the ability to know with certainty that their vote was accurately counted."  *Id.* at PageID ## 7–8.  Count Two further alleges that "[b]y allowing the chain of custody and ballot tracking in the 2020 election to be compromised . . . Hawaii has deprived its voters of the ability to know with certainty that their vote was accurately counted."  *Id.* at PageID # 8.

Count Three alleges that "[t]he Guarantee Clause of the U.S. Constitution states that, 'The United States shall guarantee to every State in the Union a Republican Form of Government . . .' (Art. IV, § 4)," and that "[b]y utilizing voting machines vulnerable to the Trapdoor mechanism . . . Hawaii has deprived its voters of the capability of knowing that their vote was accurately

3

counted and that the guaranteed republican form of government was in fact provided in the November 2020 elections." *Id.* Similar to Count Two, Count Three also alleges "[b]y allowing the chain of custody and ballot tracking in the 2020 election to be compromised . . . Hawaii has deprived its voters of the ability to know with certainty that their vote was accurately counted and that the guaranteed republican form of government was in fact provided in the November 2020 elections." *Id.*

All three counts seek "temporary, preliminary, and permanent injunctive relief by restraining Defendant from destroying the November 2020 election data as scheduled 22 months after the election, until a thorough investigation of the ballot chain of custody, ballot tracking, the election software and its Trapdoor vulnerabilities can be undertaken." *Id.* at PageID ## 7, 8.

In accordance with that request, on August 29, 2022, Plaintiff filed an "Emergency Ex Parte Motion to Retain and Preserve Evidence" ("Motion for Temporary Restraining Order ('TRO')"). ECF No. 7. The court decides the Motion for TRO without a hearing under Local Rule 7.1(c). The Motion for TRO seeks an order requiring Defendant "to Retain and Preserve all ballots from the 2020 Primary Elections in the State of Hawaii until conclusion of [this action]," *id.* at PageID # 269, contending that "Defendant will be destroying critical evidence from this case on September 3rd 2022," *id.* at PageID # 266. In that regard, he

4

bases "jurisdiction" on 52 U.S.C. § 20701, which sets forth certain requirements for retention and preservation of records and papers by officers of elections.[1]  *Id.* at PageID # 268.

Based on the following, the Motion for TRO is DENIED.

## II.  <u>STANDARD OF REVIEW</u>

A court may issue a TRO without written or oral notice to the adverse party only if the party requesting the relief provides an affidavit or verified complaint providing specific facts that "clearly show that immediate and irreparable injury, loss, or damage will result to the movant before the adverse party can be heard in opposition."  Fed. R. Civ. P. 65(b)(1)(A).  In addition, the

---

[1] 52 U.S.C. § 20701 provides:

> Every officer of election shall retain and preserve, for a period of twenty-two months from the date of any general, special, or primary election of which candidates for the office of President, Vice President, presidential elector, Member of the Senate, Member of the House of Representatives, or Resident Commissioner from the Commonwealth of Puerto Rico are voted for, all records and papers which come into his possession relating to any application, registration, payment of poll tax, or other act requisite to voting in such election, except that, when required by law, such records and papers may be delivered to another officer of election and except that, if a State or the Commonwealth of Puerto Rico designates a custodian to retain and preserve these records and papers at a specified place, then such records and papers may be deposited with such custodian, and the duty to retain and preserve any record or paper so deposited shall devolve upon such custodian.  Any officer of election or custodian who willfully fails to comply with this section shall be fined not more than $1,000 or imprisoned not more than one year, or both.

movant or his attorney must certify in writing "any efforts made to give notice and the reasons why it should not be required." Fed. R. Civ. P. 65(b)(1)(B).

Even if such notice is provided, a TRO may issue only if a movant meets their burden under well-established factors. The standard for issuing a temporary restraining order is identical to the standard for issuing a preliminary injunction. *See, e.g.*, *Hawaii ex rel. Anzai v. Gannett Pac. Corp.*, 99 F. Supp. 2d 1241, 1247 (D. Haw. 1999), *aff'd sub nom. State of Hawaii v. Gannett Pac. Corp.*, 203 F.3d 832 (9th Cir. 1999); *cf. Stuhlbarg Int'l Sales Co. v. John D. Brush & Co.*, 240 F.3d 832, 839 n.7 (9th Cir. 2001) (observing that an analysis of a preliminary injunction is "substantially identical" to an analysis of a temporary restraining order).

A preliminary injunction is an extraordinary and drastic remedy never awarded as of right. *Munaf v. Geren*, 553 U.S. 674, 689−90 (2008). A party "seeking a preliminary injunction must establish that he is likely to succeed on the merits, that he is likely to suffer irreparable harm in the absence of preliminary relief, that the balance of equities tips in his favor, and that an injunction is in the public interest." *Winter v. Nat. Res. Def. Council, Inc.*, 555 U.S. 7, 20 (2008); *accord Sierra Forest Legacy v. Rey*, 577 F.3d 1015, 1021 (9th Cir. 2009). "That is, 'serious questions going to the merits' and a balance of hardships that tips sharply towards the plaintiff can support issuance of a preliminary injunction, so

long as the [movant] also shows that there is a likelihood of irreparable injury and that the injunction is in the public interest." *Alliance for the Wild Rockies v. Cottrell*, 632 F.3d 1127, 1135 (9th Cir. 2011). *Winter* emphasizes that movants seeking preliminary relief must demonstrate that "irreparable injury is *likely* in the absence of an injunction."  555 U.S. at 22; *see also Stormans, Inc. v. Selecky*, 586 F.3d 1109, 1127 (9th Cir. 2009).

## III.  DISCUSSION

Pirtle fails to meet the requirements for granting a TRO without notice.  First, Pirtle has not demonstrated compliance with the requirements of Federal Rules of Civil Procedure 65(b)(1)(A) and (B).  As to the first requirement, he provided neither an affidavit nor a verified complaint with specific facts establishing that "immediate and irreparable injury, loss, or damage will result" to him.  *See* Fed. R. Civ. P. 65(b)(1)(A) (requiring "specific facts in an affidavit or a verified complaint").  As to the second requirement, he has not "certifie[d] in writing any efforts made to give notice and the reasons why it should not be required."  Fed. R. Civ. P. 65(b)(1)(B).  Nothing in the record indicates that Pirtle has served the Motion for TRO (much less completed service of the complaint itself).

Moreover, even if Defendant had sufficient notice, Pirtle's Motion for TRO fails because he has not demonstrated a likelihood of success on the merits.

Pirtle's claim under the Guarantee Clause plainly fails. Article IV, Section 4 of the U.S. Constitution provides in part that "[t]he United States shall guarantee to every State in this Union a Republican Form of Government[.]" But "[the Supreme] Court has several times concluded . . . that the Guarantee Clause does not provide the basis for a justiciable claim." *Rucho v. Common Cause*, 139 S. Ct. 2484, 2506 (2019). That is, such a claim in not "properly suited for resolution by federal courts." *Id.* at 2491.

What's more, the Motion for TRO appears to rely on duties set forth in 52 U.S.C. § 20701. *See* ECF No. 7 at PageID # 268. But, "[i]n a word, 52 U.S.C. § 20701 does not confer a private right of action." *Fox v. Lee*, 2019 WL 13141701, at *1 (N.D. Fla. Apr. 2, 2019); *see also Soudelier v. Dept. of State, Louisiana*, 2022 WL 3686422, at *1 (E.D. La. Aug. 25, 2022) (denying motion for TRO seeking, among other things, an order that "none of the data and information of the voting systems and equipment from the 2020 general elections be tampered with, nor deleted") (citing *Fox*).

Finally, Pirtle's generalized claims for denial of equal protection and due process appear to fail for, at minimum, a lack of standing to bring his challenges. Under Article III of the U.S. Constitution, federal courts may only exercise judicial power over "case" and "controversies." *Lujan v. Defs. of Wildlife*, 504 U.S. 555, 559 (1992). And "[s]tanding to sue is a doctrine rooted in the

traditional understanding of a case or controversy." *Spokeo, Inc. v. Robins*, 575

U.S. 330, 338 (2015).   A plaintiff seeking relief in federal court must first

demonstrate "a personal stake in the outcome of the controversy," *Baker v. Carr*,

369 U.S. 186, 204 (1962), that is *distinct from* a "generally available grievance

about government," *Lance v. Coffman*, 549 U.S. 437, 439 (2007) (quoting *Lujan*,

504 U.S. at 573-74).  To establish standing, a plaintiff has the burden of clearly

demonstrating that he or she has: "(1) suffered an injury in fact, (2) that is fairly

traceable to the challenged conduct of the defendant, and (3) that is likely to be

redressed by a favorable judicial decision." *Spokeo, Inc*., 575 U.S. at 338 (citing

*Lujan*, 504 U.S. at 560–61).  To establish an injury in fact, a plaintiff must have

suffered "an invasion of a legally protected interest" that is "concrete and

particularized" and "actual or imminent, not conjectural or hypothetical." *Lujan*,

504 U.S. at 560.  A "particularized" injury means "the injury must affect the

plaintiff in a personal and individual way." *Raines v. Byrd*, 521 U.S. 811, 819

(1997) (citing *Lujan*, 504 U.S. at 560 n.1).

Pirtle asserts only a "generalized" grievance, not a particularized

injury.  His Motion for TRO argues that "[w]ithout the allowing of the public to

see these ballots and without the motion to Temporarily Retain and Preserve the

evidence for public audit we do not only place a stain upon our great nation and its

founding principles in the Constitution[,] but we disobey and reject our creator

God." ECF No. 7 at PageID # 269. And the complaint only alleges that Pirtle is a "registered voter" in Hawaii; nothing else describes any personal or particularized harm he might suffer. ECF No. 1 at PageID # 3. The complaint alleges several times that "Hawaii has deprived its voters of the capability of knowing that their vote was accurately counted." *Id.* at PageID ## 6, 7. It alleges that "[n]o citizen can be assured that their vote was not modified by actors working with the Trapdoor mechanism, and therefore citizens of Hawaii were denied equal protection of the election laws." *Id.* at PageID # 7. These are generalized grievances for which Pirtle lacks standing to assert in federal court. *See Wood v. Raffensperger*, 981 F.3d 1307, 1314 (11th Cir. 2020) (finding no standing in an election challenge for a plaintiff who based standing on "ensuring that only lawful ballots are counted," reasoning that "[a]n injury to the right to require that the government be administered according to the law is a generalized grievance") (citations and internal editorial marks omitted); *see also Election Integrity Project California, Inc. v. Weber*, 2021 WL 4501998, at *4 (C.D. Cal. June 14, 2021) (reiterating that "[t]he Supreme Court continues to decline to extend standing to plaintiffs asserting objections to state election laws on generalized vote dilution theories," and reasoning that "[p]laintiffs' allegations amount to an incremental undermining of confidence in the election results, past and future. Such a generalized grievance is insufficient for standing.") (citations omitted); *Griffin v.*

10

*Hawaii*, 2020 WL 7233343, at *3 (D. Haw. Dec. 8, 2020) (dismissing challenge to Hawaii's mail-in and in-person voting for the 2020 primary and general elections because, in part, the first amended complaint "contains no allegations that the 'mail-in' voting laws will affect Plaintiff in a personal and individual way") (emphasis omitted).

In short, Plaintiff has not demonstrated a likelihood of success on the merits, and thus his Motion for TRO necessarily fails. *See, e.g.*, *DISH Network Corp. v. Fed. Commc'n Comm'n*, 653 F.3d 771, 776 (9th Cir. 2011) (reiterating that all four elements of the *Winter* test must be established before a preliminary injunction is warranted); *Yellen v. Hara*, 2015 WL 4877805, at *6 (D. Haw. Aug. 13, 2015) (denying Plaintiff's motion for TRO because "*Winter* requires all four elements," and where there was no likelihood of success on the merits).

///

///

///

///

///

///

///

11

## IV.  <u>CONCLUSION</u>

The Motion for TRO fails under Rule 65 and fails to meet the applicable standard set forth in *Winter*.  Accordingly, Plaintiff James Pirtle's Motion for Temporary Restraining Order, ECF No. 7, is DENIED.

IT IS SO ORDERED.

DATED:  Honolulu, Hawaii, August 31, 2022.



 /s/ J. Michael Seabright
J. Michael Seabright
Chief United States District Judge

*Pirtle v. Nago*, Civ. No. 22-00381 JMS-WRP, Order Denying Plaintiff's "Emergency Ex Parte Motion to Retain and Preserve Evidence," ECF No. 7