**TABLE OF CONTENTS**


TABLE OF AUTHORITIES ..... i

I. INTRODUCTION ..... 1

II. BACKGROUND ..... 3

A. APPLICABLE ELECTION STATUTES AND LEGISLATIVE HISTORY ..... 3

1. Chief Election Officer ..... 3

2. Act 136, Session Laws of Hawaii 2019 ..... 3

3. Mail-in Ballots ..... 4

B. PLAINTIFF'S COMPLAINT ..... 5

C. PLAINTIFF'S CONTINUING COMMUNICATIONS DIRECTED AT THE OFFICE OF ELECTIONS AND DEFENDANT ..... 7

III. STANDARDS OF REVIEW ..... 9

A. DISMISSAL PURSUANT TO RULE 12(b)(1) ..... 9

B. DISMISSAL PURSUANT TO RULE 12(b)(6) ..... 9

IV. ARGUMENT ..... 11

A. PLAINTIFF LACKS ARTICLE III STANDING TO ASSERT HIS CLAIMS ..... 11

B. THE ELEVENTH AMENDMENT AND SOVEREIGN IMMUNITY PRECLUDE PLAINTIFF'S CLAIMS ..... 13

C. PLAINTIFF FAILS TO STATE A CLAIM UNDER THE EQUAL PROTECTION, DUE PROCESS, AND GUARANTEE CLAUSES OF THE U.S. CONSTITUTION ..... 16

D. PLAINTIFF FAILS TO STATE A CLAIM UPON WHICH RELIEF CAN BE GRANTED ..... 18

V. CONCLUSION ..... 19

# TABLE OF AUTHORITIES

## Cases

*Alden v. Maine*,
527 U.S. 706 (1999) .......... 15

*Ariz. Students' Ass'n v. Ariz. Bd. of Regents*,
824 F.3d 858 (9th Cir. 2016) .......... 13

*Ashcroft v. Iqbal*,
556 U.S. 662 (2009) .......... 10

*Atascadero State Hosp. v. Scanlon*,
473 U.S. 234 (1985) .......... 14

*Beaulieu v. Vermont*,
807 F.3d 478 (2d Cir. 2015) .......... 15

*Bell Atl. Corp. v. Twombly*,
550 U.S. 544 (2007) .......... 10

*Bennett v. Yoshina*,
140 F.3d 1218 (9th Cir. 1998) .......... 17

*Bognet v. Sec'y Commw. of Pa.*,
980 F.3d 336 (3rd Cir. 2020) .......... 12

*Brandon v. Holt*,
469 U.S. 464 (1985) .......... 14

*Bush v. Gore*,
531 U.S. 98 (2000) .......... 17, 18

*Cent. Rsrv. Life of N. Am. Ins. Co. v. Struve*,
852 F.2d 1158 (9th Cir. 1988) .......... 15

*Clark v. California*,
123 F.3d 1267 (9th Cir. 1997) .......... 14

*Demery v. Kupperman*,
735 F.2d 1139 (9th Cir. 1984) .......... 15

*Farmers Ins. Ex. V. Port La Prairie Mut. Ins. Co.*,
907 F.2d 911 (9th Cir. 1990) .......... 9

*Feehan v. Wis. Elections Comm'n*,
506 F.Supp.3d 596 (E.D. Wis. 2020) .......... 18

*Ford Motor Co. v. Dep't of Treasury of Ind.*,
323 U.S. 459 (1945) .......... 15

*K.W. ex rel. D.W. v. Armstrong*,
789 F.3d 962 (9th Cir. 2015) .......... 13, 16

*Koala v. Khosla*,
931 F.3d 887 (9th Cir. 2019) .......... 14

*Kokkonen v. Guardian Life Ins. Co. of America*,
511 U.S 375 (1994) .......... 11

*Krainski v. Nevada ex rel. Bd. of Regents of the Nev. Sys. of Higher Educ.*,
616 F.3d 963 (9th Cir. 2010) .......... 13

*Lubin v. Panish*,
415 U.S. 709 (1974) .......... 17, 18

*Lujan v. Defenders of Wildlife*,
504 U.S. 555 (1992) .......... 11, 13

*Pahk v. Hawaii*,
109 F.Supp.2d 1262 (D. Haw. 2000) .......... 16

*Papasan v. Allain*,
478 U.S. 265 (1986) .......... 14

*Pennhurst State Sch. & Hosp. v. Halderman*,
465 U.S. 89 (1984) .......... 14

*Rucho v. Common Cause,*
139 S.Ct. 2484 (2019) .......... 17, 18

*Safe Air for Everyone v. Meyer*,
373 F.3d 1035 (9th Cir. 2004) .......... 9

*Seminole Tribe of Fla. v. Florida*,
517 U.S. 44 (1996) .......... 13

*Sopcak v. Northern Mountain Helicopter Svc.*,
52 F.3d 817 (9th Cir. 1995) .......... 9

*Sprewell v. Golden State Warriors*,
266 F.3d 979 (9th Cir. 2001) .......... 10

*Steel Co. v. Citizens for a Better Env't*,
523 U.S. 83 (1998) .......... 11

*Swartz v. KPMG LLP,*
476 F.3d 756 (9th Cir. 2007) .......... 11

*UMG Recordings, Inc. v. Shelter Capital Partners*,
718 F.3d 1006 (9th Cir. 2013) .......... 9

*Va. Off. of Prot. & Advocacy v. Stewart*,
563 U.S. 247 (2011) .......... 14

*Vess v. Ciba-Geigy Corp. USA*,
317 F.3d 1097 (9th Cir. 2003) .......... 11

*Warth v. Seldin*,
422 U.S. 490 (1975) .......... 12

*Will v. Michigan Dept. of State Police*,
491 U.S. 58 (1989) .......... 14

**HAWAII REVISED STATUTES (HRS)**

HRS § 11-101 .......... 4
HRS § 11-104(c) .......... 4
HRS § 11-109(d) .......... 4
HRS § 11-110(b)(1)(A) .......... 4, 13, 18
HRS § 11-110(b)(1)(B) .......... 5
HRS § 11-2 .......... 3
HRS tit. 2 .......... 3

**FEDERAL RULES OF CIVIL PROCEDURE (FRCP)**

FRCP R. 8(a)(2) ... 10
FRCP R. 12(b)(1) ... 9
FRCP R. 12(b)(6) ... 9
FRCP R. 56(a) ... 19
FRCP R. 65(b)(1)(A) ... 7
FRCP R. 65(b)(1)(B) ... 7

**CONSTITUTIONAL PROVISIONS**

Haw. Const. art. IV, § 3 ... 3
U.S. Const. amend. XIV, § 1 ... 17

**LEGISLATION**

H.B. No. 1248, 30th Leg., Reg. Sess. (2019) ... 3

IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF HAWAII

| | |
|---|---|
| JAMES PIRTLE, *pro se*,<br><br>Plaintiff,<br><br>v.<br><br>SCOTT NAGO, in his official capacity as Chief Election Officer of the State of Hawaii,<br><br>Defendant. | CASE NO.: CV22-00381-JMS-WRP<br><br>MEMORANDUM IN SUPPORT OF MOTION |

**MEMORANDUM IN SUPPORT OF MOTION**

## I. INTRODUCTION

This case concerns a registered voter's dissatisfaction with Hawaii's established mail-in voting procedures. On August 18, 2022, Plaintiff JAMES PIRTLE ("Plaintiff") filed a Complaint with this Honorable Court against Defendant SCOTT NAGO, in his official capacity as Chief Election Officer of the State of Hawaii ("Defendant"). Plaintiff alleges that the 2020 and 2022 elections "cannot be shown to provide the fair elections guaranteed to every citizen under the U.S. Constitution" due to a "trapdoor mechanism," and deficient chain of custody and ballot tracking procedures. Plaintiff requests that this Honorable Court provide "temporary, preliminary, and permanent injunctive relief by restraining Defendant from destroying the November 2020 election data

as scheduled 22 months after the election, until a thorough investigation of the ballot chain of custody, ballot tracking, and election software and its Trapdoor vulnerabilities can be undertaken."[1] Plaintiff subsequently filed an "Emergency Ex Parte Motion to Retain and Preserve Evidence" on August 29, 2022 ("Motion for TRO").[2] Plaintiff's Motion for TRO sought the same relief that Plaintiff's Complaint requested. On August 31, 2022, this Honorable Court denied Plaintiff's Motion for TRO ("Order Denying Plaintiff's TRO").

Because Plaintiff lacks Article III standing to bring this action, Plaintiff's Complaint should be dismissed with prejudice. Alternatively, should this Honorable Court find that it does have subject matter jurisdiction over this Complaint, Defendant asserts that the Complaint should be dismissed because the Eleventh Amendment and sovereign immunity preclude Plaintiff's claims and the Complaint fails to state a federal claim.

---

[1] Defendant notes that the 2020 election ballots have not been destroyed. *See* Declaration of Scott T. Nago ("Nago Decl.") at para. 2.

[2] Defendant was not served with Plaintiff's Complaint until September 1, 2022. *Id.* at 3; *see also* Ex. A, attached hereto and Nago Decl. at para. 5. Notably, service of Plaintiff's Complaint did not include either a copy of Plaintiff's Motion for TRO or the Order Denying Plaintiff's TRO, which was issued prior to service of the Complaint. *See id.* at para. 4.

## II. BACKGROUND

### A. APPLICABLE ELECTION STATUTES AND LEGISLATIVE HISTORY

The following is a brief summary of applicable election statutes and the relevant legislative history concerning the State's transition to mail-in voting.

#### 1. Chief Election Officer

The Chief Election Officer is a constitutionally mandated officer under the Hawai‘i State Constitution. Haw. Const. art. IV, § 3. The Hawai‘i State Constitution clearly states that there shall be a Chief Election Officer "whose responsibilities shall be as provided by law and shall include the supervision of state elections, the maximization of registration of eligible voters throughout the State and the maintenance of data concerning registered voters, elections, apportionment and districting." *Id.* Consistent with this, Hawai‘i's election laws provide for the duties and responsibilities of the Chief Election Officer directly in Hawaii Revised Statutes ("HRS") § 11-2 and additionally throughout Title 2 of the HRS. *See* HRS § 11-2; *see generally* HRS tit. 2.

#### 2. Act 136, Session Laws of Hawaii 2019

In 2019, the Hawaii State Legislature passed Act 136 relating to elections. H.B. No. 1248, Haw. Sess. Laws 2019. In finding that "an increasing number of Hawaii voters are submitting their votes by mail[,]" the Legislature explained that

the implementation of vote-by-mail "would significantly reduce the logistical issues related to conducting elections at polling places." *Id.* at § 1.

### 3. **Mail-in Ballots**

HRS § 11-101 states that "[b]eginning with the 2020 primary election, all elections shall be conducted by mail in accordance with this title." HRS § 11-101. HRS § 11-104(c) governs ballot returns and provides in relevant part that:

> [t]o cast a valid ballot, the voter shall return the return identification envelope containing the optional secrecy envelope or secrecy sleeve with the marked ballot in any manner:
> (1) *So that the return identification envelope is received by the clerk or the clerk's designee no later than the closing hour of voting*; provided that anyone who is standing in line at the closing hour of voting with the intent of returning a ballot shall be permitted to do so;

*Id.* § 11-104(c) (emphasis added). Additionally, HRS § 11-109(d) states that:

> [t]he clerks may designate and provide for places of deposit to be open as early as the mailing of ballots by the clerks; provided that the locations and apparatus for receiving voted ballots can be securely maintained during the period of use for each election, and as may be permitted by the operational hours.

*Id.* § 11-109(d). Concerning election responsibilities for elections by mail, HRS § 11-110(b)(1)(A) states that for elections involving both the state and county offices or involving both federal and county offices, "*[t]he counties shall be responsible for* voter registration, absentee voting, voter service centers, places of deposit, and *the mailing and receipt of ballots*[.]" *Id.* § 11-110(b)(1)(A)

(emphases added). HRS § 11-110(b)(1)(B) further states, *"[t]he State shall be responsible for the printing and counting of ballots*[.]" *Id.* § 11-110(b)(1)(B) (emphasis added).

### B. PLAINTIFF'S COMPLAINT

On August 18, 2022, Plaintiff filed a Complaint alleging that "[t]he methods by which elections . . . in Hawaii were conducted in 2020 and are being conducted in 2022 cannot be shown to provide the fair elections guaranteed to every citizen under the U.S. Constitution." Dkt. No. 1 at 2. Plaintiff reasoned that Hawaii elections have previously been and will continue to be conducted "in a manner that cannot ensure that each vote cast is counted as cast" due to a "Trapdoor mechanism," which by design makes all "output of votes shown in reported election results impossible to reconcile with the ballot inputs, except under a full visual inspection and re-count of all paper ballots cast." *Id.*

Because of Plaintiff's belief in this alleged inherent risk, Plaintiff stated that retention of the 2020 election data must be preserved to "verify the 2020 election results and to ensure the fairness of all future elections." *Id.* Plaintiff further added that until in-person voting using paper ballots can be reestablished, "Americans cannot have any level of confidence that the reported results of any elections accurately reflect the votes cast." *Id.*

Plaintiff further asserted that Defendant "neglected to fulfill his obligation to propose 'legislation necessary to clarify and make consistent chapters 11, 12, 15, 15D, 16, and 19, Hawaii Revised Statutes, in light of the transition to statewide elections by mail." *Id.* at 5. Plaintiff added that Defendant obfuscated his duty to ensure that Hawaii's election is fair because Defendant stated, "that the receipt of ballots via USPS mail and drop boxes are the responsibility of the counties, so he can make the recommendation, but cannot guarantee that they will be on board." *Id.*

Plaintiff alleges three separate claims under 42 U.S.C. § 1983: the violations of the equal protection and due process under the Fourteenth Amendment along with a violation of the Guarantee Clause. *Id.* at 6–10. Plaintiff requests that this Honorable Court assume jurisdiction over this action and sought "temporary, preliminary, and permanent injunctive relief by restraining Defendant from destroying the November 2020 election data as scheduled 22 months after the election, until a thorough investigation of the ballot chain of custody, ballot tracking, and election software and its Trapdoor vulnerabilities can be undertaken." *Id.* at 7–9.

On August 29, 2022, Plaintiff filed a Motion for TRO to retain and preserve all evidence from the 2020 General Election beyond the 22-month preservation date. Dkt. No. 7 at 1. Plaintiff stated that this Honorable Court had

jurisdiction to grant his Motion for TRO based upon 52 U.S.C. § 20701. *Id.* at 4. As to the public interest, Plaintiff stated that "[w]ithout the allowing of the public to see these ballots and without the motion to Temporarily Retain and Preserve [sic] the evidence for public audit we do not only place a stain upon our great nation and its founding principles in the Constitution but we disobey and reject our creator God." *Id.* at 5. In its Order Denying Plaintiff's TRO, this Honorable Court denied Plaintiff's Motion for TRO on August 31, 2022, for failure to meet the requirements of FRCP Rule 65(b)(1)(A) and (B), failure to demonstrate a likelihood of success on the merits, and for lack of standing. Dkt. 8 at 7–11.

### C. PLAINTIFF'S CONTINUING COMMUNICATIONS DIRECTED AT THE OFFICE OF ELECTIONS AND DEFENDANT

Plaintiff has previously expressed and continues to express his dissatisfaction with the Office of Elections, Defendant, and mail-in ballots. On September 8, 2022, Plaintiff sent the following email to the Office of Elections, addressed to Defendant, stating:

> I do not consent to any Voting Machines being used in Any and All United States Elections. The Elections Office of Hawaii cannot without 100 percent transparency and security ensure that Voting Machines are accurate, true, and not vulnerable to hacking, algorithyms, [sic] tampering, and back door software along with trap door software.

Ex. B, attached hereto and Nago Decl. at para. 6. On the same day, Plaintiff sent another email to the Office of Elections, which again was addressed to Defendant, stating:

> I do not consent to mail in ballots. Massive fraud has been proven to be conducted using Mail In ballots. We the people where never asked if we wanted mail in ballots. Laws where [sic] passed without We the People's consent. The election commission, chief election officer, and elections office staff members and state legislatures state wide are in violation of the United States Constitution.

Govern yourselves accordingly.

Ex. C, attached hereto and Nago Decl. at para. 7. On September 13, 2022, Plaintiff sent another email to the Office of Elections stating “I do not consent to my state delegating its authority to manage and conduct elections to the federal government. The involvement of federal entities, such as DHS and CISA, in state elections is repugnant to both Article I, Section 4 and the Tenth Amendment to the United States Constitution” and that “[i]f my state's election officials insist that the involvement of federal agencies in my state's elections is necessary to ensure the integrity of electronic voting machines, then my state’s election officials should cease the use of such machines in the election process.” Ex. D, attached hereto and Nago Decl. at para. 8.

## III. STANDARDS OF REVIEW

### A. DISMISSAL PURSUANT TO RULE 12(b)(1)

Under Federal Rules of Civil Procedure ("FRCP") Rule 12(b)(1), a district court must dismiss a complaint if it lacks subject-matter jurisdiction to hear the claims alleged in the complaint. *See* FRCP R. 12(b)(1). A jurisdictional attack pursuant to FRCP Rule 12(b)(1) may be either facial or factual. *See Safe Air for Everyone v. Meyer*, 373 F.3d 1035, 1039 (9th Cir. 2004) (internal citation omitted). A facial attack challenges the sufficiency of the allegations contained in the complaint to invoke federal jurisdiction, whereas a factual attack "disputes the truth of the allegations that, by themselves, would otherwise invoke federal jurisdiction." *Id.* The burden of proof for establishing jurisdiction falls upon the plaintiff. *Sopcak v. Northern Mountain Helicopter Svc.*, 52 F.3d 817, 818 (9th Cir. 1995) (citing *Farmers Ins. Ex. V. Port La Prairie Mut. Ins. Co.*, 907 F.2d 911, 912 (9th Cir. 1990)).

### B. DISMISSAL PURSUANT TO RULE 12(b)(6)

FRCP Rule 12(b)(6) authorizes the dismissal of a complaint for failure "to state a claim upon which relief can be granted." FRCP R. 12(b)(6). In considering a motion to dismiss, "the court accepts the facts alleged in the complaint as true," and "[d]ismissal can be based on the lack of a cognizable legal theory or the absence of sufficient facts alleged." *UMG Recordings, Inc. v.*

*Shelter Capital Partners*, 718 F.3d 1006, 1014 (9th Cir. 2013) (internal citation omitted). Conclusory allegations of law, unwarranted deductions of fact, and unreasonable inferences are insufficient to defeat a motion to dismiss. *See Sprewell v. Golden State Warriors*, 266 F.3d 979, 988 (9th Cir. 2001). Moreover, a court need not "accept as true allegations that contradict matters properly subject to judicial notice or by exhibit." *Id.* (internal citation omitted).

In order "[t]o survive a motion to dismiss, a complaint must contain sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'" *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (quoting *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007)). "A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Id.* (citing *Twombly*, 550 U.S. at 556). Further, "the tenet that a court must accept as true all of the allegations contained in a complaint is inapplicable to legal conclusions." *Id.* As such, "[t]hreadbare recitals of the elements of a cause of action, supported by mere conclusory statements, do not suffice." *Id.* (citing *Twombly*, 550 U.S. at 555). "[W]here the well-pleaded facts do not permit the court to infer more than the mere possibility of misconduct, the complaint has alleged—but it has not 'show[n]'—'that the pleader is entitled to relief.'" *Id.* at 679 (citing FRCP R. 8(a)(2)) (some alteration in original). Should a court order

the dismissal pursuant to Rule 12(b)(6), the plaintiff should be granted leave to amend unless it is clear that the claims cannot be saved by amendment. *See Swartz v. KPMG LLP*, 476 F.3d 756, 760 (9th Cir. 2007) (internal citation omitted); *Vess v. Ciba-Geigy Corp. USA*, 317 F.3d 1097, 1108 (9th Cir. 2003) (internal citation omitted).

## IV. ARGUMENT

For the reasons stated in this Honorable Court's Order Denying Plaintiff's TRO, and as stated more fully below, Plaintiff's Complaint should be dismissed.

### A. PLAINTIFF LACKS ARTICLE III STANDING TO ASSERT HIS CLAIMS

"Federal courts are courts of limited jurisdiction." *Kokkonen v. Guardian Life Ins. Co. of America*, 511 U.S 375, 377 (1994). "Article III, § 2, of the Constitution extends the 'judicial Power' of the United States only to 'Cases' and 'Controversies.'" *Steel Co. v. Citizens for a Better Env't*, 523 U.S. 83, 102 (1998). As such, "the core component of standing is an essential and unchanging part of the case-or-controversy requirement of Article III." *Lujan v. Defenders of Wildlife*, 504 U.S. 555, 560 (1992) (internal citation omitted).

Article III standing requires the following three elements: (1) that "the plaintiff must have suffered an 'injury in fact'–an invasion of a legally protected interest which is (a) concrete and particularized, and (b) 'actual or imminent, not 'conjectural' or 'hypothetical[;]'" (2) that "there must be a causal connection

between the injury and conduct complained of–the injury has to be 'fairly . . . trace[able] to the challenged action of the defendant, and not . . . th[e] result [of] the independent action of some third party not before the court[;]" and (3) "it must be 'likely,' as opposed to merely 'speculative,' that the injury will be 'redressed by a favorable decision." *Id.* at 560–61 (internal citation omitted) (some alteration in original). Further, "[t]he party invoking federal jurisdiction bears the burden of establishing these elements." *Id.* at 561 (internal citation omitted).

Here, Plaintiff's status as a resident of the State and a registered voter does not confer Article III standing to bring this suit. *See* Dkt. 8 at 8–11. Plaintiff cannot claim an injury-in-fact because the harm that Plaintiff alleges to have suffered would, if proven, amount to "a 'generalized grievance' shared in substantially equal measure by all or a large class of citizens, that harm alone does not warrant exercise of jurisdiction." *See Warth v. Seldin*, 422 U.S. 490, 499 (1975); *see also Bognet v. Sec'y Commw. of Pa.*, 980 F.3d 336, 356 (3rd Cir. 2020) (finding that an "alleged 'dilution' is suffered equally by all voters and is not 'particularized' for standing purposes."). Moreover, even assuming that Plaintiff can meet the injury-in-fact requirement to have standing, Plaintiff has neither shown "a causal connection between the injury and conduct complained of" nor that the injury is likely to be "redressed by a favorable decision." *See*

*Lujan*, 504 U.S. at 560–61. This is because Plaintiff's Complaint is premised upon a misunderstanding that Defendant is responsible for the receipt of mail-in ballots and is therefore, accountable for implementing chain of custody and ballot tracking procedures. *See* Dkt. 1 at 5. However, HRS § 11-110(b)(1)(A) expressly provides that the responsibility of handling and receiving mail-in ballots belongs to the county, not Defendant. *See* HRS § 11-110(b)(1)(A). Further, Plaintiff cannot meet the third prong to establish standing because his alleged injury is unlikely to be "redressed by a favorable decision." *See Lujan*, 504 U.S. at 561. Because Plaintiff lacks the requisite standing to bring forth this action, this Complaint should be dismissed.

### B. THE ELEVENTH AMENDMENT AND SOVEREIGN IMMUNITY PRECLUDE PLAINTIFF'S CLAIMS

"The Eleventh Amendment shields unconsenting states from suits in federal courts." *K.W. ex rel. D.W. v. Armstrong*, 789 F.3d 962, 974 (9th Cir. 2015) (citing *Seminole Tribe of Fla. v. Florida*, 517 U.S. 44, 54 (1996)). The Eleventh Amendment also bars individuals from bringing lawsuits against a state or an instrumentality of a state for monetary damages or other retrospective relief. *See Ariz. Students' Ass'n v. Ariz. Bd. of Regents*, 824 F.3d 858, 865 (9th Cir. 2016). "The Eleventh Amendment applies regardless of the nature of relief sought and extends to state instrumentalities and agencies." *Krainski v. Nevada ex rel. Bd. of Regents of the Nev. Sys. of Higher Educ.*, 616 F.3d 963, 967 (9th

Cir. 2010) (citing *Papasan v. Allain*, 478 U.S. 265, 276 (1986)). "[A] suit against a state official in his or her official capacity is not a suit against the official but rather is a suit against the official's office." *Will v. Michigan Dept. of State Police*, 491 U.S. 58, 71 (1989) (citing *Brandon v. Holt*, 469 U.S. 464, 471 (1985)). State law claims asserted in federal court against states, state agencies, and state officials acting in their official capacities are barred by the Eleventh Amendment. *See Pennhurst State Sch. & Hosp. v. Halderman*, 465 U.S. 89, 106 (1984).

However, Eleventh Amendment immunity is not absolute as Congress may abrogate a state's immunity to suit or a state may waive its immunity. *See Clark v. California*, 123 F.3d 1267, 1269 (9th Cir. 1997) (citing *Atascadero State Hosp. v. Scanlon*, 473 U.S. 234, 240–41 (1985)). Additionally, under the *Ex parte Young* exception to Eleventh Amendment immunity, "private individuals may sue state officials in federal court for *prospective relief* from ongoing violations of federal law, as opposed to money damages, without running afoul of the doctrine of sovereign immunity." *Koala v. Khosla*, 931 F.3d 887, 894–95 (9th Cir. 2019) (citing *Va. Off. of Prot. & Advocacy v. Stewart*, 563 U.S. 247, 254–55 (2011)) (emphasis in original). *Ex parte Young* stands for the proposition "when a federal court commands a state official to do nothing more than refrain from violating federal law, he is not the State for sovereign-immunity purposes." *Va. Off. of*

*Prot. & Advocacy*, 563 U.S. at 255. It does not apply to situations "when 'the state is the real, substantial party in interest[.]'" *Id.* (quoting *Ford Motor Co. v. Dep't of Treasury of Ind.*, 323 U.S. 459, 464 (1945)). A state is a real party in interest where 'the judgment sought would . . . interfere with the public administration,' or if the effect of the judgment would be 'to restrain the Government from acting, or to compel it to act.'" *Cent. Rsrv. Life of N. Am. Ins. Co. v. Struve*, 852 F.2d 1158, 1161 (9th Cir. 1988) (quoting *Demery v. Kupperman*, 735 F.2d 1139, 1146 (9th Cir. 1984)).

In addition to the Eleventh Amendment immunity, "the Constitution's structure, its history, and the authoritative interpretations by this Court make clear, the State's immunity from suit is a fundamental aspect of sovereignty which the States enjoyed before the ratification of the Constitution, and which they retain today[.]" *Alden v. Maine*, 527 U.S. 706, 713 (1999); *see, e.g.*, *Beaulieu v. Vermont*, 807 F.3d 478, 483 (2d Cir. 2015) ("Accordingly, there are two types of "sovereign immunity" [available]: (1) a particular species of sovereign immunity—Eleventh Amendment immunity from suit in federal court—and (2) the states' broader general sovereign immunity against all suits."). Moreover, sovereign immunity "does not bar all judicial review of state compliance with the Constitution and valid federal law." *Id.* at 755.

Here, Defendant is being sued in his official capacity as the Chief Election Officer for the State of Hawai‘i on matters involving state election laws. However, the State has not consented to this suit in federal court and Congress has not abrogated immunity for claims under 42 U.S.C. § 1983, to the extent Plaintiff attempts to assert a civil rights claim under the Equal Protection and Due Process Clauses of the Fourteenth Amendment and the Guarantee Clause of article IV, § 4 of the U.S. Constitution. *See Armstrong*, 789 F.3d at 974; *Will*, 491 U.S. at 71. Further, the Hawaii State Legislature has not waived the State's sovereign immunity from tort suits brought in federal courts where those actions could otherwise be brought in state court. *See Pahk v. Hawaii*, 109 F.Supp.2d 1262, 1268 (D. Haw. 2000) ("In fact, Hawaii's legislature has clearly indicated that its intent was 'not to extend jurisdiction for such [tort] actions and claims to federal courts.'"). Because Plaintiff's constitutional claims are barred by the Eleventh Amendment and sovereign immunity, this Complaint should be dismissed.

### C. PLAINTIFF FAILS TO STATE A CLAIM UNDER THE EQUAL PROTECTION, DUE PROCESS, AND GUARANTEE CLAUSES OF THE U.S. CONSTITUTION

With respect to equal protection and due process, the Fourteenth Amendment provides that States cannot "deprive any person of life, liberty, or property, without due process of law; nor deny to any person within its

jurisdiction the equal protection of the laws." U.S. Const. amend. XIV, § 1. The U.S. Supreme Court has held that "the Equal Protection Clause confers the substantive right to participate on an equal basis with other qualified voters whenever the State has adopted an electoral process for determining who will represent any segment of the State's population." *Lubin v. Panish*, 415 U.S. 709, 713 (1974) (internal citations omitted); *see also Bush v. Gore*, 531 U.S. 98, 104–05 (2000) ("Having once granted the right to vote on equal terms, the State may not, by later arbitrary and disparate treatment, value one person's vote over that of another.").

As to due process, the Ninth Circuit has stated that generally, "garden variety election irregularities do not violate the Due Process Clause, even if they control the outcome of the vote or election." *Bennett v. Yoshina*, 140 F.3d 1218, 1226 (9th Cir. 1998) (internal citations omitted). Further, the U.S. Supreme Court "has several times concluded . . . that the Guarantee Clause does not provide the basis for a justiciable claim." *Rucho v. Common Cause,* 139 S.Ct. 2484, 2506 (2019). As such, claims involving the Guarantee Clause are not justiciable, and are therefore not "properly suited for resolution by the federal courts." *See id.* at 2491.

Here, Plaintiff's federal constitutional claims turn almost entirely on his allegations concerning Defendant's inadequate administration of state election

laws. Specifically, Plaintiff's claims rest solely on Defendant's statement that the responsibility for the mailing and receipt of election ballots falls upon the county, as provided under HRS § 11-110(b)(1)(A). Plaintiff plainly and simply disagrees with this proposition. *See* Dkt. 1 at 5.

However, despite his disagreement, Plaintiff's allegations fail to support a federal claim because Plaintiff is unable to show disparate or unfair treatment regarding mail-in ballots, and election irregularities alone are an inadequate basis for due process and Guarantee Clause claims. *See Lubin*, 415 U.S. at 713; *Bush*, 531 U.S. at 104–05; *Yoshina*, 140 F.3d at 1226; *Rucho*, 139 S.Ct. at 2506. Accordingly, this Complaint should be dismissed.

### D. PLAINTIFF FAILS TO STATE A CLAIM UPON WHICH RELIEF CAN BE GRANTED

Plaintiff makes repeated allegations concerning an inherent security risk in voting machines, otherwise known as the "Trapdoor mechanism," but provides no factual support for this contention. *See* Dkt. 1 at 2, 3, 5–6, 7, 8. Rather, Plaintiff merely relies on a declaration, attached to Plaintiff's Complaint at Ex. G, submitted in a separate federal district court action as the primary basis for his claim.[3] *See Feehan v. Wis. Elections Comm'n*, 506 F.Supp.3d 596 (E.D. Wis.

[3] We note that Plaintiff cited to the "affidavit of Terpsehore Maras, filed under penalty of perjury on December 1, 2020 in case #2:20-cv-01771-PP in the 2nd Judicial District of the Denver District Court in Denver, Colorado" in his

2020). However, that case was dismissed by the district court for lack of subject matter jurisdiction. *See id.* Because Plaintiff fails to provide any evidentiary support for his allegations, this Complaint should be dismissed.

## V. CONCLUSION

For the foregoing reasons, Defendant respectfully request this Honorable Court to grant this motion to dismiss with prejudice. Alternatively, should this Honorable Court find that matters outside the pleadings are presented to and not excluded by this Court, Defendant respectfully requests that this motion be treated as one for summary judgment and granted pursuant to Rule 56(a), FRCP.

DATED: Honolulu, Hawaiʻi, September 20, 2022.

HOLLY T. SHIKADA
Attorney General of Hawaiʻi

/s/ REESE R. NAKAMURA
PATRICIA OHARA
REESE R. NAKAMURA
JENNIFER H. TRAN
Deputy Attorneys General

Attorneys for Scott Nago, in his official capacity as Chief Election Officer of the State of Hawaii

---

Complaint. Dkt. 1 at 6. We clarify for the record that our research shows that this case was before the District Court for the Eastern District of Wisconsin.