IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF HAWAII

| | |
|---|---|
| JAMES PIRTLE,<br><br>        Plaintiff,<br><br>  vs.<br><br>SCOTT NAGO, in his official capacity as Chief Election Officer of the State of Hawaii,<br><br>        Defendant. | CIV. NO. 22-00381 JMS-WRP<br><br>ORDER GRANTING DEFENDANT'S MOTION TO DISMISS, OR IN THE ALTERNATIVE, FOR SUMMARY JUDGMENT, ECF NO. 10 |

## ORDER GRANTING DEFENDANT'S MOTION TO DISMISS, OR IN THE ALTERNATIVE, FOR SUMMARY JUDGMENT, ECF NO. 10

### I. INTRODUCTION

Defendant Scott Nago, in his official capacity as the Chief Election Officer of the State of Hawaii ("Defendant" or "Nago"), has filed a Motion to Dismiss (or, in the alternative, for summary judgment) as to pro se Plaintiff James Pirtle's ("Plaintiff" or "Pirtle") Complaint filed against him on August 18, 2022. *See* ECF No. 10. Nago contends that this court lacks subject-matter jurisdiction over the Complaint, and that the Complaint fails to state a claim. Because the court agrees that it lacks subject-matter jurisdiction, the Motion to Dismiss is GRANTED.

## II.  BACKGROUND

Plaintiff's Complaint alleges that Plaintiff is "a resident and registered voter of the State of Hawaii," ECF No. 1 at 3, PageID.3, and challenges aspects of Hawaii's method of conducting its 2020 elections.  *See id.* at 2, PageID.2.  In substance, the complaint contends that:

> 1.  The methods by which elections at the local, state, and federal levels in Hawaii were conducted in 2020 and are being conducted in 2022 cannot be shown to provide the fair elections guaranteed to every citizen under the U.S. Constitution.  *See* the 14th Amendment to the U.S. Constitution, the Elections Clause (Art. I. § 4, cl. 1).
>
> 2.  Hawaii elections were conducted in 2020 and are planned to be conducted in 2022 in a manner that cannot ensure that each vote cast is counted as cast.  In 2020, there were glaring chain of custody issues and a lack of follow through to establish a verifiable chain of custody process, despite what was written in official reports.
>
> 3. A cryptographic security risk inherent in all voting machines by design, a Trapdoor mechanism described [in attached exhibit], makes the output of votes shown in reported election results impossible to reconcile with the ballot inputs, except under a full visual inspection and re-count of all paper ballots cast.
>
> 4. The feasibility of changing the votes after the machines read the ballots is too high to leave such a critical aspect of the fundamental right to free and fair elections in the United States vulnerable to the intentions of foreign and domestic bad actors who would sway election results at all levels, Local, State and Federal.
>
> 5.  In order to verify the 2020 election results and to ensure the fairness of all future elections, retention of the

> November, 2020 election data beyond the September 4th, 2022 required period is necessary.
>
> 6. Until an in-person, paper ballot, day-of-election voting process is re-established, with results reported immediately after the voting period ends, Americans cannot have any level of confidence that the reported results of any elections accurately reflect the votes cast.
>
> 7. Before and during the November 2020 election, neither of the two Voting System Testing Laboratories ("VSTLs") typically accredited by the Election Assistance Commission ("EAC") had current un-expired accreditations. Therefore, with no valid Federally approved VSTLs, there could be no such VSTL approval of Hawaii's voting systems for the November 2020 election.
>
> 8. Time is of the essence, as the 22-month election data retention requirement expires relative to the November 2020 election on September 3rd, 2022.

*Id.* at 2–3, PageID.2–3.

The Complaint alleges three counts under 42 U.S.C. § 1983: (1) a denial of equal protection under the Fourteenth Amendment of the U.S. Constitution; (2) a denial of due process under the Fourteenth Amendment of the U.S. Constitution; and (3) a violation of the Guarantee Clause, § 4 of the U.S. Constitution. *Id.* at 6−8, PageID.6−8.

> In particular, Count One of the Complaint alleges that:
>
> By allowing the chain of custody and ballot tracking in the 2020 election to be compromised . . . , Hawaii has deprived its voters of the capability of knowing that their vote was accurately counted. No citizen can be assured

3

>that their vote was not discarded or modified by actors who may have seized the opportunity to tamper with the ballots. Stating that the election was not tampered with, except for the lack of chain of custody and ballot tracking, is not sufficient to ensure the fair elections guaranteed to every citizen under the U.S. Constitution, and therefore, Hawaii citizens were denied equal protection of the election laws.

*Id.* at 6, PageID.6.

Similarly, Count Two alleges that "[t]he Supreme Court of the United States has recognized that the right to vote consists of not only casting a ballot, but having that vote counted accurately, as it was cast," and that "[b]y allowing the chain of custody and ballot tracking in the 2020 election to be compromised . . . , Hawaii has deprived its voters of the ability to know with certainty that their vote was accurately counted." *Id.* at 7–8, PageID.7–8. Count Two further alleges that "[b]y allowing the chain of custody and ballot tracking in the 2020 election to be compromised . . . Hawaii has deprived its voters of the ability to know with certainty that their vote was accurately counted," *id.* at 8, PageID.8, and that "[b]y utilizing voting machines vulnerable to the Trapdoor mechanism . . . Hawaii has deprived its voters of the ability to know with certainty that their vote was accurately counted," *id.*

And Count Three alleges that "[t]he Guarantee Clause of the U.S. Constitution states that, 'The United States shall guarantee to every State in the Union a Republican Form of Government . . .' (Art. IV, § 4)," and that "[b]y

4

utilizing voting machines vulnerable to the Trapdoor mechanism . . . Hawaii has deprived its voters of the capability of knowing that their vote was accurately counted and that the guaranteed republican form of government was in fact provided in the November 2020 elections." *Id.*

All three counts seek "temporary, preliminary, and permanent injunctive relief by restraining Defendant from destroying the November 2020 election data as scheduled 22 months after the election, until a thorough investigation of the ballot chain of custody, ballot tracking, the election software and its Trapdoor vulnerabilities can be undertaken." *Id.* at 7−8, PageID.7−8.[1]

---

[1] Seeking immediate injunctive relief, Plaintiff filed a Motion for Temporary Restraining Order ("TRO") on August 29, 2022, ECF No. 7, which the court denied on August 31, 2022. *See Pirtle v. Nago*, 2022 WL 3915570 (D. Haw. Aug. 31, 2022). From that proceeding, it is apparent that Plaintiff's reference to "destroying the November 2020 election data as scheduled 22 months after the election" concerns 52 U.S.C. § 20701, which provides in part:

> Every officer of election shall retain and preserve, for a period of twenty-two months from the date of any general, special, or primary election of which candidates for the office of President, Vice President, presidential elector, Member of the Senate, Member of the House of Representatives, or Resident Commissioner from the Commonwealth of Puerto Rico are voted for, all records and papers which come into his possession relating to any application, registration, payment of poll tax, or other act requisite to voting in such election [with statutory exceptions].

As the court explained in its Order denying Plaintiff's Motion for TRO, § 20701 does not confer a private right of action. *See Pirtle*, 2022 WL 3915570, at *3. And in that Order, the court also reasoned that Plaintiff was unlikely to succeed on Count III of the Complaint—alleging a violation of the Guarantee clause—because that claim plainly fails. *See id.* (citing *Rucho v. Common Cause*, 139 S. Ct. 2484, 2506 (2019) ("[The Supreme] Court has several times concluded . . . that the Guarantee Clause does not provide the basis for a justiciable claim.")); *see also Rucho*, 139 S. Ct. at 2491 (reiterating that a claim based on the Guarantee clause is not "properly suited for resolution by federal courts"). Although the court here is dismissing based

(continued . . . )

5

### III. **STANDARDS OF REVIEW**

Federal Rule of Civil Procedure 12(b)(1) permits a motion to dismiss for lack of subject matter jurisdiction. A challenge to the court's jurisdiction under Rule 12(b)(1) can be either "facial" or "factual." *Safe Air for Everyone v. Meyer*, 373 F.3d 1035, 1039 (9th Cir. 2004). A "facial" attack accepts the truth of the plaintiff's allegations but asserts that they "are insufficient on their face to invoke federal jurisdiction." *Id.* The court resolves a facial attack as it would a motion to dismiss under Rule 12(b)(6): Accepting the nonmovant's well pleaded factual allegations as true and drawing all reasonable inferences in the nonmovant's favor, the court determines whether the allegations are sufficient to invoke the court's jurisdiction. *See, e.g.*, *Pride v. Correa*, 719 F.3d 1130, 1133 (9th Cir. 2013).

"If, on a motion under Rule 12(b)(6) . . . matters outside the pleadings are presented to and not excluded by the court, the motion must be treated as one for summary judgment under Rule 56." Fed. R. Civ. P. 12(d). However, courts may "consider certain materials—documents attached to the complaint, documents incorporated by reference in the complaint, or matters of judicial notice—without converting the motion to dismiss into a motion for summary judgment." *United States v. Ritchie*, 342 F.3d 903, 908 (9th Cir. 2003).

---

on a lack of standing, the court's reasoning set forth in its Order denying the TRO has not changed.

## IV. **DISCUSSION**

The court lacks subject-matter jurisdiction over the complaint because Plaintiff lacks standing to bring his generalized grievances related to Hawaii's 2020 and 2022 elections.

Under Article III of the U.S. Constitution, federal courts may only exercise judicial power over "case" and "controversies." *Lujan v. Defs. of Wildlife*, 504 U.S. 555, 559 (1992). And "[s]tanding to sue is a doctrine rooted in the traditional understanding of a case or controversy." *Spokeo, Inc. v. Robins*, 578 U.S. 330, 338 (2016). A plaintiff seeking relief in federal court must first demonstrate "a personal stake in the outcome," *Baker v. Carr*, 369 U.S. 186, 204 (1962), *distinct from* a "generally available grievance about government," *Lance v. Coffman*, 549 U.S. 437, 439 (2007) (per curiam). To establish standing, a plaintiff has the burden of clearly demonstrating that he or she has: "(1) suffered an injury in fact, (2) that is fairly traceable to the challenged conduct of the defendant, and (3) that is likely to be redressed by a favorable judicial decision." *Spokeo, Inc.*, 575 U.S. at 338 (citing *Lujan*, 504 U.S. at 560–61). To establish an injury in fact, a plaintiff must have suffered "an invasion of a legally protected interest" that is "concrete and particularized" and "actual or imminent, not conjectural or hypothetical." *Lujan*, 504 U.S. at 560. A "particularized" injury means "the injury

must affect the plaintiff in a personal and individual way." *Raines v. Byrd*, 521 U.S. 811, 819 (1997).

Here, Plaintiff asserts only "generalized" grievances, not particularized injuries. His Complaint alleges only that Pirtle is a "registered voter" in Hawaii, and nothing else describes any personal or particularized harm he might suffer. ECF No. 1 at 3, PageID.3. It alleges several times that "Hawaii has deprived its voters of the capability of knowing that their vote was accurately counted." *Id.* at 6−7, PageID.6−7. It alleges that "[n]o citizen can be assured that their vote was not modified by actors working with the Trapdoor mechanism, and therefore citizens of Hawaii were denied equal protection of the election laws." *Id.* at 7, PageID.7. These are generalized grievances for which Pirtle lacks standing to assert in federal court.

As the Eleventh Circuit reasoned, a voter who "bases his standing on his interest in ensuring that only lawful ballots are counted," *Wood v. Raffensperger*, 981 F.3d 1307, 1314 (11th Cir. 2020) (internal editorial marks omitted), asserts only a generalized grievance. *Id.* "And the Supreme Court has made clear that a generalized grievance, 'no matter how sincere,' cannot support standing." *Id*. (quoting *Hollingsworth v. Perry*, 570 U.S. 693, 706 (2013)). "A generalized grievance is 'undifferentiated and common to all members of the public.'" *Id.* (quoting *Lujan*, 504 U.S. at 575). As in *Raffensperger*, "[Pirtle]

cannot explain how his interest in compliance with state election laws is different from that of any other person." *Id.; see also Election Integrity Project California, Inc. v. Weber*, 2021 WL 4501998, at *4 (C.D. Cal. June 14, 2021) (reasoning that "[p]laintiffs' allegations amount to an incremental undermining of confidence in the election results, past and future. Such a generalized grievance is insufficient for standing."). Indeed, a decision from this District has ruled identically in a specific challenge to Hawaii's "mail-in" voting laws. *See Griffin v. Hawaii*, 2020 WL 7233343, at *3 (D. Haw. Dec. 8, 2020) (dismissing challenge to Hawaii's mail-in and in-person voting for the 2020 primary and general elections because, in part, the first amended complaint "contains no allegations that the 'mail-in' voting laws will affect Plaintiff in a personal and individual way") (emphasis omitted).

Accordingly, the court lacks subject-matter jurisdiction over this case. *See, e.g.*, *City of Oakland v. Lynch*, 798 F.3d 1159, 1163 (9th Cir. 2015) ("A suit brought by a plaintiff without Article III standing is not a 'case or controversy,' and an Article III federal court therefore lacks subject matter jurisdiction over the suit.") (quoting *Cetacean Cmty. v. Bush,* 386 F.3d 1169, 1174 (9th Cir. 2004)).[2]

---

[2] Because Plaintiff lacks standing, the court denies—to the extent it seeks affirmative relief—Plaintiff's "Counter Motion for Submittal into Evidence Undestroyed 'Ballot' and 'Voting System' Used in the 2020 General Election with Request for Order of Injunction of all 'Ballots' and 'Voting System' in the 2022 General Election," ECF No. 14.

9

## V. <u>CONCLUSION</u>

Because Plaintiff lacks standing to bring his claims, the Motion to Dismiss is GRANTED for lack of subject-matter jurisdiction. It is also clear, after reviewing the proceedings in the prior Motion for TRO and the allegations of the Complaint, that leave to amend is not appropriate because amendment would be futile. *See, e.g.*, *Cervantes v. Countrywide Home Loans, Inc.*, 656 F.3d 1034, 1041 (9th Cir. 2011) (explaining that dismissal without leave to amend is proper when amendment would be futile). The Complaint is dismissed without prejudice. *See Barke v. Banks*, 25 F.4th 714, 721 (9th Cir. 2022) ("[D]ismissals for lack of Article III jurisdiction must be entered without prejudice because a court that lacks jurisdiction "is powerless to reach the merits.") (quoting *Fleck & Assocs., Inc. v. Phoenix, City of, an Ariz. Mun. Corp.*, 471 F.3d 1100, 1106–07 (9th Cir. 2006)). The Clerk of Court is directed to close the case file and enter judgment in favor of Defendant.

IT IS SO ORDERED.

DATED: Honolulu, Hawaii, November 18, 2022.



/s/ J. Michael Seabright
J. Michael Seabright
United States District Judge

*Pirtle v. Nago*, Civ. No. 22-00381 JMS-WRP, Order Granting Defendant's Motion to Dismiss, or in the Alternative, For Summary Judgment, ECF No. 10